**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Taylor L. Doney** | ) | **CASE NO.** |
| **6954 Pine Knoll Drive** | ) | |
| **Clinton, Ohio 44216** | ) | **JUDGE** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Louis DeJoy, Postmaster General** | ) | |
| **U.S. Postal Service** | ) | |
| **c/o General Counsel** | ) | **(Type: Other Civil; Employment** |
| **475 L'Enfant Plaza, S.W. Room6004** | ) | **Discrimination; Title VII; Jury** |
| **Washington, D.C. 20260-1100** | ) | **Demand Endorsed Hereon)** |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Taylor L. Doney, for her causes of action and claims for relief against Defendant avers, as of all times pertinent, the following matters and things.

1.  1.  Plaintiff Taylor L. Doney ("Ms. Doney") brings this action to redress against Defendant United States Postal Service ("Defendant" or "USPS")  for sex-based discrimination, subjecting her to a gender-based hostile work environment and retaliating against her on account of her complaints of sexual harassment in the workplace all in violation of Title VII of the Civil Rights of 1964, as amended.

2.  Ms. Doney was employed as a Rural Carrier Associate/Srv. Reg. Rte. ("RCA Carrier") at the Clinton Post Office located in Clinton, Ohio.

3.  Defendant Louis DeJoy, Postmaster General, U.S. Postal Service, is the legally designated representative of Defendant USPS for the purpose of the claims asserted in this action.

4.  Defendant was at all times relevant hereto and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title

VII").

5. Ms. Doney was supervised by Mike Isakov, Postmaster of the Clinton Post Office.

6. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

7. Venue lies in this district because Plaintiff was employed as a letter carrier in Clinton, Ohio, and the relevant events occurred in this district.

8. Ms. Doney brings claims against Defendant based on the gender based disparate treatment and gender based hostile work environment she endured in the workplace of Defendant that was fostered and condoned by Defendant, and the resultant retaliation by Defendant on account of her complaints that she was subjected to gender based disparate treatment and gender based hostile work environment in the work place all in violation of Title VII.

9. This Court has jurisdiction over Ms. Doney's Title VII sexual harassment, sex- based hostile work environment claim, retaliation and retaliation-based hostile work environment claims by virtue of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991 to bring the United States Postal Service and its employees within the purview of the Act, specifically, 42 U.S.C. §2000e-16 (hereinafter "Title VII").

10. Venue is proper in this Court is proper as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

11. Ms. Doney has exhausted the administrative remedies necessary to bring this action which resulted in a Final Agency Decision issued on July 29, 2020 which Ms. Doney received on August 3, 2020.

## Count I (Title VII sex discrimination)

**12.** Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

**13.** Ms. Doney began her employment with the USPS on April 1, 2020. In her position she was a probationary employee.

**14.** Shortly after she was hired, Ms. Doney realized that she was placed lower on the seniority list than two other female employees hired as RCA carriers on the same date she was hired. An RCA carrier with lower seniority was assigned a route that afforded her full-time hours to cover the route of a carrier who was out on medical leave. Ms. Doney was assigned significantly less hours. She complained to Mr. Isakov who shrugged his shoulders and smiled. He never afforded Ms. Doney any explanation. He never corrected the seniority list.

**15.** Mr. Isakov had made favorable comments about the physical appearance and the dress of the RCA carrier assigned the full-time route and made comments about the car she drove. She was substantially older than Ms. Doney. Ms. Doney observed Ms. Isakov treated the RCA carrier more favorably that her because Ms. Doney did not fit the stereotype of an attractive older woman.

**16.** On Sunday May 19, 2020 Ms. Doney was assigned to work out of the Wadsworth, Ohio Post Office to deliver parcels.

**17.** During the course of the day she was subjected increasingly unwelcome and offensive sex-based comments, conduct and offensive touching from a male coworker assigned to train and/or otherwise assist her in delivering parcels. The offensive comments included a statement involving a sex act.

18. Ms. Doney did not know what to do that day as she was alone on the route with her male coworker. She felt he was taking advantage of the situation. She was fearful for her personal safety and particularly as a probationary employee feared retaliation if she reported his conduct.

19. On May 19, 2019 Ms. Doney told a female coworker, one of the RCA carriers hired at the same time she was hired and who also assigned to work at the Wadsworth Post Office on May 19, 2019, how she had been sexually harassed.

20. On May 20, 2019 Mr. Isakov asked this female coworker how work was on May 19, 2019. She informed him that Ms. Doney had something to ell him, but it was not her place to say. Mr. Isakov did not contact her.

21. On May 22, 2019, the next day she was assigned to work, Mr. Isakov asked Ms. Doney about the incident and asked her to write as statement. She wrote a detailed statement documenting the events of May 19, 2019 including the offensive and unwelcome sex-based conduct of her male coworker.

22. Ms. Doney's union steward got involved and compelled Mr. Isakov to contact the USPS HR representative. The HR representative interviewed Ms. Doney.

23. The HR representative never informed Ms. Doney of the results of her investigation. She asked Ms. Doney assigning her on days the male carrier who harassed her was not assigned to work would remedy the situation. The HR representative told Ms. Doney she would inform her of the resolution of her complaint.

24. Ms. Doney was subsequently assigned to work out of the Wadsworth Post Office on a Sunday to deliver parcels. Since Ms. Doney had not yet been told of the outcome and resolution of the investigation, she called HR expressing her fear of running into the

4

male carrier who had harassed her. HR took her off the schedule.

25. HR never informed MS. Doney of how her complaint was resolved and how she would be protected from contact with the male coworker in the workplace.

26. This resolution further limited the hours available to be assigned to Ms. Doney and caused her severe emotional distress.

27. The manner in which she was harassed in the workplace and the USPS failure to inform her of any prompt remedial relief that was taken caused her severe emotional distress and caused her to call off work on occasion or refuse assignments.

28. This resolution further limited the hours available to be assigned to Ms. Doney.

29. On or about May 24, 2019 Mr. Isakov prepared and presented Ms. Doney with a 30-day report addressing her performance. He rated her as unsatisfactory in four out of six categories. He did not discuss any of the deficiencies with Ms. Doney in any detail.

30. Ms. Doney contends the 30-day report was not an accurate depiction of her performance. She contends the low scores were in retaliation for her advocating for the correction of the seniority list and for reporting the sexual harassment she endured in the workplace.

31. In a further act of harassment and retaliation, on or about June 16, 2019, Mr. Isakov confronted Ms. Doney and stated that if he knew her parents had outbid him on the house they purchased years before, he would not have hired her.

32. On or about June 16, 2019 prior to making the above comment to Ms. Doney, Mr. Isakov had been assisting a carrier by delivering packages. He delivered a package to Ms. Doney's parent's home and spoke to two women in the driveway, one of whom happened to be Ms. Doney's mother. He recognized her mother as the person who

outbid him at a sheriff's sale. He commented that she was the person who outbid him.

33. Ms. Doney contends that the June 16, 2019 comment was a further act of sex-based disparate treatment and/or retaliation and that it demonstrated his dislike for women, such as Ms. Doney and her mother, who challenged him.

34. On July 16, 2019, at the end of her 90-day probationary period, Mr. Isakov sent Ms. Doney a letter terminating her employment. He based his decision on unsatisfactory performance, refusal to accept assignments when she was called in to work and for excessive absenteeism.

35. The stated basis for terminating Ms. Doney are pretextual.

36. Similarly situated RCA Carriers who had not engaged in protected activity were treated more favorably than Ms. Downey in the evaluation process and retained beyond the 90-day period despite having performance and evaluation records much lower that Ms. Doney.

37. A regular carrier who observed the performance of Ms. Doney and the comparable RCA Carriers informed Mr. Isakov that she could not believe he terminated Ms. Doney when it was apparent her performance was better that the comparable RCA carriers and that he treated the comparable RCA carriers more favorably than he treated Ms. Doney.

38. Defendant by failed to take prompt and effective remedial action after Ms. Doney complained about sexual harassment in the workplace.

39. At all relevant times, Ms. Doney was treated differently and less favorably than similarly situated employees, because of her female gender and in retaliation for her engagement complaints about sexual harassment in the workplace and Defendant's failure to take prompt remedial action after she complained.

40. Defendant engaged in patterns or practices of employment discrimination and retaliation for having engaged in protected activity, violative of Title VII, against Ms. Doney.

41. Defendant discriminated against Ms. Doney in violation of Title VII in the terms and conditions of her employment, including, but not limited to disparate performance standards, non-retention and firing, because of her gender and/or in retaliation for her engagement complaints about sexual harassment in the workplace and Defendant's failure to take prompt remedial action after she complained.

42. By reason of the foregoing acts and omissions of discrimination in the form of gender based disparate treatment and gender-based hostile work environment fostered and condoned by Defendant in violation of Title VII, Ms. Doney has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

## Count II (Title VII Retaliation)

43. Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

44. Ms. Doney began her employment with the USPS on April 1, 2020. In her position she was a probationary employee.

45. Shortly after she was hired, Ms. Doney realized that she was placed lower on the seniority list than two other female employees hired as RCA carriers on the same date she was hired. An RCA carrier with lower seniority was assigned a route that afforded her full-time hours to cover the route of a carrier who was out on medical leave. Ms. Doney was assigned significantly less hours. She complained to Mr. Isakov who

7

shrugged his shoulders and smiled. He never afforded Ms. Doney any explanation. He never corrected the seniority list.

**46.** Mr. Isakov had made favorable comments about the physical appearance and the dress of the RCA carrier assigned the full-time route and made comments about the car she drove. She was substantially older than Ms. Doney. Ms. Doney observed Ms. Isakov treated the RCA carrier more favorably that her because Ms. Doney did not fit the stereotype of an attractive older woman.

**47.** On Sunday May 19, 2020 Ms. Doney was assigned to work out of the Wadsworth, Ohio Post Office to deliver parcels.

**48.** During the course of the day she was subjected increasingly unwelcome and offensive sex-based comments, conduct and offensive touching from a male coworker assigned to train and/or otherwise assist her in delivering parcels. The offensive comments included a statement involving a sex act.

**49.** Ms. Doney did not know what to do that day as she was alone on the route with her male coworker. She felt he was taking advantage of the situation. She was fearful for her personal safety and particularly as a probationary employee feared retaliation if she reported his conduct.

**50.** On May 19, 2019 Ms. Doney told a female coworker, one of the RCA carriers hired at the same time she was hired and who also assigned to work at the Wadsworth Post Office on May 19, 2019, how she had been sexually harassed.

**51.** On May 20, 2019 Mr. Isakov asked this female coworker how work was on May 19, 2019. She informed him that Ms. Doney had something to ell him, but it was not her place to say. Mr. Isakov did not contact her.

8

**52.** On May 22, 2019, the next day she was assigned to work, Mr. Isakov asked Ms. Doney about the incident and asked her to write as statement. She wrote a detailed statement documenting the events of May 19, 2019 including the offensive and unwelcome sex-based conduct of her male coworker.

**53.** Ms. Doney's union steward got involved and compelled Mr. Isakov to contact the USPS HR representative. The HR representative interviewed Ms. Doney.

**54.** The HR representative never informed Ms. Doney of the results of her investigation. She asked Ms. Doney assigning her on days the male carrier who harassed her was not assigned to work would remedy the situation. The HR representative told Ms. Doney she would inform her of the resolution of her complaint.

**55.** Ms. Doney was subsequently assigned to work out of the Wadsworth Post Office on a Sunday to deliver parcels. Since Ms. Doney had not yet been told of the outcome and resolution of the investigation, she called HR expressing her fear of running into the male carrier who had harassed her. HR took her off the schedule.

**56.** HR never informed MS. Doney of how her complaint was resolved and how she would be protected from contact with the male coworker in the workplace.

**57.** This resolution further limited the hours available to be assigned to Ms. Doney and caused her severe emotional distress.

**58.** The manner in which she was harassed in the workplace and the USPS failure to inform her of any prompt remedial relief that was taken caused her severe emotional distress and caused her to call off work on occasion or refuse assignments.

**59.** This resolution further limited the hours available to be assigned to Ms. Doney.

**60.** On or about May 24, 2019 Mr. Isakov prepared and presented Ms. Doney with a

30-day report addressing her performance. He rated her as unsatisfactory in four out of six categories. He did not discuss any of the deficiencies with Ms. Doney in any detail.

**61.** Ms. Doney contends the 30-day report was not an accurate depiction of her performance. She contends the low scores were in retaliation for her advocating for the correction of the seniority list and for reporting the sexual harassment she endured in the workplace.

**62.** In a further act of harassment and retaliation, on or about June 16, 2019, Mr. Isakov confronted Ms. Doney and stated that if he knew her parents had outbid him on the house they purchased years before, he would not have hired her.

**63.** On or about June 16, 2019 prior to making the above comment to Ms. Doney, Mr. Isakov had been assisting a carrier by delivering packages. He delivered a package to Ms. Doney's parent's home and spoke to two women in the driveway, one of whom happened to be Ms. Doney's mother. He recognized her mother as the person who outbid him at a sheriff's sale. He commented that she was the person who outbid him.

**64.** Ms. Doney contends that the June 16, 2019 comment was a further act of sex-based disparate treatment and/or retaliation and that it demonstrated his dislike for women, such as Ms. Doney and her mother, who challenged him.

**65.** On July 16, 2019, at the end of her 90-day probationary period, Mr. Isakov sent Ms. Doney a letter terminating her employment. He based his decision on unsatisfactory performance, refusal to accept assignments when she was called in to work and for excessive absenteeism.

**66.** The stated basis for terminating Ms. Doney are pretextual.

**67.** Similarly situated RCA Carriers who had not engaged in protected activity were

10

treated more favorably than Ms. Downey in the evaluation process and retained beyond the 90-day period despite having performance and evaluation records much lower that Ms. Doney.

**68.** A regular carrier who observed the performance of Ms. Doney and the comparable RCA Carriers informed Mr. Isakov that she could not believe he terminated Ms. Doney when it was apparent her performance was better that the comparable RCA carriers and that he treated the comparable RCA carriers more favorably than he treated Ms. Doney.

**69.** Defendant by failed to take prompt and effective remedial action after Ms. Doney complained about sexual harassment in the workplace.

**70.** At all relevant times, Ms. Doney was treated differently and less favorably than similarly situated employees, because of her female gender and in retaliation for her engagement complaints about sexual harassment in the workplace and Defendant's failure to take prompt remedial action after she complained.

**71.** Defendant engaged in patterns or practices of employment discrimination and retaliation for having engaged in protected activity, violative of Title VII, against Ms. Doney.

**72.** Defendant discriminated and retaliated against Ms. Doney in violation of Title VII in the terms and conditions of her employment, including, but not limited to disparate performance standards, non-retention and firing, because of her gender and/or in retaliation for her engagement complaints about sexual harassment in the workplace and Defendant's failure to take prompt remedial action after she complained.

**73.** By reason of the foregoing acts and omissions of retaliation by Defendant against Ms. Doney on account of her engagement in activity protected under Title VII all in

violation of Title VII, Ms. Doney has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

WHEREFORE, plaintiff demands:

**A.** Trial by jury on all Counts and issues of law, followed by bench trial to the Court on remaining issues of equity, if any;

**B.** Judgment for Plaintiff and against Defendant on Counts I and II for said sums of Back and Front Pay and Compensatory and/or reasonable attorneys' and expert witness' fees and costs under 42 U.S.C. §1988, as to Plaintiff's Title VII claims;

**C.** Judgment for pre-judgment interest on any and all damage awards, plus costs; and

**D.** Such other and further relief and redress as is just and equitable under the circumstances

Respectfully submitted,

s/ John F. Myers_____
John F. Myers #0032779
234 Portage Trail
Cuyahoga Falls, Ohio 44221
330-819-3695
330-535-0850
johnmyerscolpa@gmail.com
Attorney for Plaintiff