## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TAYLOR DONEY, | ) | CASE NO. 5:20-cv-02447 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| LOUIS DEJOY, | ) | |
| POSTMASTER GENERAL., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently pending before the Court in this case is Defendant's (hereinafter "USPS" or "Defendant") Motion for Summary Judgment (ECF No. 23).  For the following reasons, Defendant's Motion is GRANTED.

## I.       BACKGROUND

### A.  Factual Background

#### 1.  Hiring and Seniority

Plaintiff Taylor Doney ("Doney" or "Plaintiff") was hired for the position of Rural Carrier Associate ("RCA") by the USPS in April 2019. (ECF No. 1, Compl. at PageID #1; ECF No. 23-1, Mem. in Supp. at PageID #120).  Doney primarily worked at the Clinton Post Office in Clinton, Ohio.  *Id*.  As an RCA, Doney was a "non-career employee" expected to serve as "relief on a regular route." (ECF No. 23-1, Mem. in Supp. at PageID #120).  Doney worked on an as-needed basis to substitute for regular full-time Rural Carriers.  (ECF No. 23-1, Mem. in Supp. at PageID #120).  RCAs have a 90-day probationary period.  *Id*.  As part of the RCA hiring process, Doney was required to take a written test, be interviewed by her supervisor Mike Iaskov ("Iaskov"), and attend orientation and training.  (ECF No. 23-1, Mem. in Supp. at Page ID #120; ECF No. 26, Opp. at PageID # 1062).  This training included a review of the USPS zero-tolerance sexual-

1

harassment policy.  (ECF No. 23-1, Mem. in Supp. at PageID #120-21).  Additionally, access to the policy is available online as well as near the posted employee work schedule.  *Id*.

In addition to Doney, two other female RCAs – Stephanie Bowen ("Bowen") and Melissa Miller ("Miller") – were hired on the same date.  (ECF No. 23-1, Mem. in Supp. at PageID #121). Shortly thereafter, all three newly hired female RCAs were notified of their place on the seniority list based on their hiring test scores.  *Id*.  Doney was improperly ranked third among the new RCAs, even though she had the highest test score.  (*Id*.; ECF No. 26, Mem. in Opp. at PageID #1063). The assignment of a regular route to an RCA is dictated by seniority ranking.  (ECF No. 26, Mem. in Opp. at PageID #1063).  Because Doney was mistakenly ranked third, she was not assigned the available regular route  of a  full-time carrier who was out on long_term leave.  *Id*.  Doney reported the seniority list mistake to Iaskov.  *Id*.  The seniority list was corrected, placing Doney first, approximately one week later.  (ECF No. 23-1, Mem. in Supp. at PageID #121).  However, the long-term regular route was not reassigned to Doney.  (ECF No. 26, Mem. in Opp. at PageID #1063).

### 2.  Sexual Harassment

The RCAs at Clinton Post Office may elect to be on the volunteer list to work "Amazon Sunday" at the Wadsworth, Ohio Post Office.  (ECF No. 23-1, Mem. in Supp. at PageID #122). On Amazon Sunday, Amazon packages are delivered by volunteer RCAs.  *Id*.  Doney was assigned to work an Amazon Sunday on May 19, 2019 at the Wadsworth Post Office.  (*Id*.; ECF No. 26, Mem. in Opp. at PageID #1063).  On this day, Doney worked with a Wadsworth Post Office RCA, Matthew Simpson ("Simpson").  (*Id*.; ECF No. 26, Mem. in Opp. at PageID #1064).  Doney alleged that Simpson sexually harassed her by (1) flirting with her and calling her "babe" and "honey," (2) calling her "distracting" and mentioning her attire, (3) rubbing her shoulders while

2

saying "you'll be fine babe" or "you got this babe," (4) tickling her stomach while reaching over her to grab a package, and (5) asking her for sexual favors.  (ECF No. 26, Mem. in Opp. at PageID # 1064-65).  Immediately thereafter, Doney discussed these incidents with Bowen.  (ECF No. 26, Mem. in Opp. at PageID # 1065).

Doney did not immediately report Simpson's alleged conduct to Iaskov. The next day, Bowen went to work and told Iaskov that Doney had something to tell him. *Id*. On May 22, 2019, the next day that Doney was scheduled to work, she met with Bowen and Iaskov and formally reported the conduct after being prompted by both Bowen and Iaskov.  (ECF No. 23-1, Mem. in Supp. at PageID #124; ECF No. 26, Mem. in Opp. at PageID #1065).  On that same day, Iaskov notified the Wadsworth Postmaster, Shernill LaFortune ("LaFortune"), Wadsworth Post Office Supervisor Richard Gragg ("Gragg"), and Iaskov's supervisor Richard Clark ("Clark") of Doney's sexual harassment report.[1]  (ECF No. 23-1, Mem. in Supp. at PageID #124).  Thereafter, LaFortune and another supervisor, Tod Steinhour ("Steinhour"), interviewed Simpson;  Simpson denied the touching but admitted to calling Doney "hon."  (ECF No. 23-1, Mem. in Supp. at PageID #124).  The USPS Human Resources Manager for the Northern Ohio District, Annette Dressler ("Dressler"), was then informed of Doney's complaint and conducted an investigation.  *Id*.  Dressler determined that Doney and Simpson should be kept separate.  (*Id*. at PageID #125).  Dressler interviewed Doney, who informed her that she no longer wanted to be scheduled on Amazon Sunday.  *Id*.  Dressler then instructed management not to schedule Doney on Amazon Sunday, nor was she to work with Simpson.  (*Id*.; ECF No. 26, Mem. in Opp. at PageID #1066).  Approximately three weeks after these instructions were given, Dressler instructed Gragg to put Doney back on the Amazon Sunday schedule; Simpson was taken off the Amazon Sunday

---

[1] See Email from Iaskov to Gragg, LaFortune, and Clark (ECF No. 23-2, Def.'s Ex. A at PageID #209).

Schedule.  (ECF No. 26, Mem. in Opp. at PageID #1066).  Doney informed Dressler that she did not feel comfortable working on Amazon Sunday; she was taken back off of the schedule.  (*Id*. at PageID #1067).

### 3. Termination

On May 24, 2019, Doney and Iaskov met to conduct Doney's thirty-day evaluation.[2]  (*Id*. at PageID #1068).  Doney's evaluation was negative, and she was marked "unsatisfactory" in  a number of areas.  (*Id*.; ECF No. 27, Reply in. Supp. at PageID #1084).  The thirty-day evaluation included a discussion of Doney's attendance, work quantity, dependability, work relations, and personal conduct.  (ECF No. 26, Mem. in Opp. at PageID #1068).  On July 15, 2019, Iaskov prepared a Letter of Separation, terminating Doney's employment with the USPS, due to her unavailability to work and poor performance.[3]  (ECF No. 23-1, Mem. in Supp. at PageID #125).  Doney's attendance record reflects that in a one-month period, starting on June 10, 2019, she was absent from work eleven days.[4]  (*Id*. at PageID #126).  Doney's Service Performance Measurement ("SPM") rating – measured through a scanner that tracked the length of time it took Doney to make deliveries and calculate her efficiency – showed a 15% SPM completion rate for the month of June 2019.[5]  (*Id*. at PageID #128).  Both Bowen and Miller (the other probationary RCAs) received an 84% SPM completion rate for June 2019.  (*Id*. at PageID #127-28).

### B. Procedural History

After her termination, Doney filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and was issued a Final Agency Decision denying her claim with the EEOC on July 29, 2020.  (ECF No. 1, Compl. at PageID #2 ¶ 11).  On

---

[2] See Employee Evaluation and/or Probationary Report (ECF No. 23-2, Def.'s Ex. A at PageID #213).
[3] See Letter of Separation (ECF No. 23-2, Def.'s Ex. A. at PageID #214).
[4] See Doney's Absence Analysis form for Leave Year 2019 (ECF No. 23-2, Def.'s Ex. A at PageID #189-90).
[5] See June 2019 SPM Scan Results (ECF No. 23-2, Def.'s Ex. A at PageID #172).

October 28, 2020, Doney filed her Complaint (ECF No. 1) in this Court against the USPS, alleging

that she experienced sex-based discrimination, gender-based hostile work environment, and

retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e.

(ECF No. 1, Compl. at PageID #1 ¶ 1).  On October 18, 2021, the USPS filed its Motion for

Summary Judgment; it asserts that Doney's Title VII claim should be dismissed as a matter of law

because there is no genuine dispute of material fact that (1) Doney was not treated differently than

a similarly situated employee outside of her protected class; (2) the USPS had legitimate and

nondiscriminatory reasons for Doney's termination; and (3) the USPS did not respond to Doney's

sexual harassment allegations with "indifference or unreasonableness."  (ECF No. 23, Def.'s Mem.

in Supp. at PageID #119).  Doney filed her Opposition (ECF No. 26) to the Motion, to which the

USPS replied (ECF No. 27).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there
> is no genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law. The court should state on the record the
> reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact must support the

assertion by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  In most cases this requires the court to decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4).  The trial court also does not have "a

duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

### III.    LAW AND ANALYSIS

Doney argues that the USPS's termination of her employment was discriminatory.  She claims Title VII sex-based discrimination, see 42 U.SC. 2000e(a)(1), retaliation, see 42 U.S.C. 2000e-(3)(a), and that she experienced a hostile work environment, see 42 U.SC. 2000e-(2)(a). The Court rejects all three arguments.

#### A.  Title VII and Sex-Based Discrimination

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's gender.  42 U.S.C. § 2000e(a)(1).  The Sixth Circuit has made clear that under Title VII, a plaintiff may satisfy her burden of establishing sex-based discrimination by "presenting either direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d. 359, 363 (6th Cir. 2010).  The Sixth Circuit has described direct evidence as "smoking gun evidence that explains itself."  *See Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (explaining that "[d]irect evidence is evidence that proves the existence of a fact without requiring any inferences to be drawn"). "Direct evidence, if believed, requires a conclusion by the fact-finder that unlawful discrimination was at least a "motivating factor" for the employer's actions." *Younis*, 610 F.3d at 363; *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir.2003) (*en banc* ). Conversely, circumstantial evidence "allow[s] a factfinder to draw a reasonable inference that discrimination occurred." *Kyle-Eiland v. Neff*, 408 Fed.Appx. 933, 939-40 (6th Cir. 2011) (quoting *Wexler*, 317 F.3d at 520). Courts in the Sixth Circuit use the burden-shifting framework set out in *McDonnell*

*Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973), to analyze claims based on circumstantial evidence. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2021).

### 1.  Direct Evidence

As to the error in seniority ranking, Doney failed to provide any direct evidence that Iaskov's assignment of a regular route to Bowen , rather than Doney, was due to sex-based discrimination. "Direct evidence of discrimination does not require any inferences to conclude that the challenged action was motivated at least in part by prejudice against members of the protected group." *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *4 (6th Cir. 2022); *see Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (explaining that "a facially discriminatory employment policy of a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent.").

In her Complaint, Doney alleges that Iaskov "made favorable comments about the physical appearance and the dress of Bowen and made comments about the car she drove."  (ECF No. 1, Compl. at PageID #3 ¶ 15).  She also alleges that Iaskov treated Bowen more favorably than her because "Doney did not fit the stereotype of an attractive older woman".  *Id*.  These allegations, even if true, are not sufficient for the Court to draw a reasonable inference that route assignments were made based on sex-based discrimination.  Doney has not  provided any evidence, direct or circumstantial, that a male RCA carrier was assigned a regular route, instead of her, due to sex-based discrimination.

As to her termination, Doney similarly has not  provided any direct evidence that she was terminated due to sex-based discrimination.  Both Doney's Complaint and Opposition to the USPS's Motion for Summary Judgment fail to provide evidence sufficient to make such a finding. In her Opposition, Doney stated that Miller received formal counseling regarding attendance and

that she was not afforded any such counseling. (ECF No. 26, Opp. at PageID #1076-1077). Further, Doney speculated that Bowen had seventeen absences on her attendance record between June 2019 and October 2019. *Id*. Doney made no mention of whether Bowen was engaged in protected activity during these absences.

As to Doney's SPM rating, she alleges that Miller was afforded additional training on the system that she did not receive. (*Id*. at PageID #1077). While Doney mentions that the scheduled SPM training occurred on a day that she was not scheduled to work, and that Iaskov never offered her additional training, she offered no evidence that she requested additional training and was denied. *Id*. The Court finds that these allegations do not compel the conclusion that the USPS's decision to terminate Doney was motivated by gender animus. Even if the Court accepts Doney's allegations as true, she has presented no evidence that a similarly situated male RCA was treated more favorably than her. Absent such evidence, she cannot survive summary judgment.

### 2. Circumstantial Evidence

Having determined that Doney failed to produce direct evidence that her sex was the but-for cause of her termination, the Court now turns to the burden shifting *McDonnell Douglas* framework. The *McDonnell Douglas* framework has three steps. First, the plaintiff bears the burden of establishing a prima facie case of discrimination. *Miles*, 946 F.3d at 887; *citing McDonnell Douglas*, 411 U.S. at 802. Second, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for its action. *Id*.; *Burzynski v Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). Third, once the employer has articulated a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason was a mere pretext for discrimination. *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008); *See also McDonnell Douglas*, 411 U.S. at 805. If the Plaintiff can establish that the employer's stated

reason was pretext for discrimination, "the fact-finder may reasonably infer discrimination." *Miles*, 946 F.3d at 887.

### 3. *McDonnell Douglass* Analysis

In order for Doney to establish a prima facie case of sex-based discrimination, she must show: that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was replaced by someone outside of the protected class or a similarly-situated, non-protected employee was treated more favorably. *Geiger v. Tower Auto*, 579 F.3d 614,622 (6th Cir. 2009). The USPS concedes that as a woman, Doney is a member of a protected class and that she met the minimum qualifications for the RCA position that she held. (ECF No. 23, Def.'s Mem. in Supp. at PageID #129).

#### a. Doney has failed to establish a prima facie case of sex-based discrimination.

As to the seniority list ranking and her thirty-day evaluation, Doney cannot establish the second and fourth prongs of a prima facie case of sex-based discrimination. As to termination, Doney cannot establish the fourth prong of a prima facie case of sex-based discrimination.

##### i. Seniority List

As to the second prong, the mistake in Doney's seniority ranking does not qualify as an "adverse employment action." An "adverse employment action" under Title VII is an action by an employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Burlington Industries v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *See* 42 U.S.C. § 2000e et seq. None of these applies to Doney's situation. The seniority list mistake was corrected within one week of Doney pointing it out, near the beginning of her employment with the USPS. (ECF No. 3-1, Mem. in Supp. at PageID #121).

10

Her route assignments from that time on would have been based on her appropriate ranking. Doney has not alleged that after pointing out this mistake, that she continued to be passed over for route assignments based on the mistaken ranking.

As to the fourth prong, Doney has failed to show that a similarly situated non-protected employee received different treatment than she.  Doney alleges that she was mistakenly placed lowest on the seniority list under two other female RCAs hired on the same date as her and, in turn, Iaskov assigned one of those other female RCAs a route with full-time hours.  (ECF No. 1, Compl. at PageID #3).  Doney goes on to allege that her manager made favorable comments about the physical appearance and dress of that female RCA and that he treated her more favorably because Doney did not fit the stereotype of an attractive older woman.  *Id*.  These  allegations by Doney wholly fail to assert that a male was treated more favorably than she with regard to seniority ranking.  Although Doney's former manager testified that he made a mistake in the seniority list,[6] Doney offers no evidence showing that a newly hired male RCA received favorable treatment, regarding route assignments or hours, due to this mistake.  Doney simply argues that her manager could have bumped the other two female employees from their assigned positions after discovering the seniority mistake.  (ECF No. 26, Mem. in Opp. at PageID #1063).

### ii.  Thirty-Day Evaluation

As to the second prong, Doney's negative thirty-day evaluation does not constitute an adverse employment action.  *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) (Generally, "a negative performance evaluation does not constitute an adverse employment action, unless the evaluation has an adverse impact on an employee's wages or salary.").  However, a negative performance evaluation may constitute an adverse employment action where the

---

[6] See ECF No. 23-2; Isakov Dep. at PageID #144-45.

employee can "point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation." *Morris v. Oldham Cnty. Fiscal Court,* 201 F.3d 784, 789 (6th Cir.2000). In *Tuttle,* the Sixth Circuit linked the plaintiff's negative performance evaluation to the plaintiff's transfer and found that the evaluation constituted an adverse employment action. *Tuttle*, 474 F.3d at 322–23. Doney's thirty-day evaluation included unsatisfactory remarks for work quantity, dependability, work relations, and personal conduct. (ECF No. 26, Opp. at PageID #1068). After the evaluation, Doney retained her employment with the USPS and had sixty days to improve her SPM rating and attendance record. This would presumably have allowed her to retain her position after the ninety-day probationary period. Doney has not alleged that she suffered any decrease in wages or salary as a result of her thirty-day evaluation, nor has she provided any evidence that she did.

As to the fourth prong, Doney failed to show that a similarly situated male employee was given a favorable thirty-day review. Doney has not provided any evidence that her unsatisfactory remarks were either false or actually made on a discriminatory basis. She also has presented no evidence that a male RCA with similar performance issues was treated more favorably than she or received a positive evaluation. In fact, she only mentions what she considers favorable treatment of two other female RCA co-workers, Bowen and Miller. (*Id*. at PageID #1069).

### iii. Termination

The USPS concedes that Doney suffered an adverse employment action when she was terminated. (ECF No. 23, Def.'s Mem. in Supp. at PageID #129). This leaves the Court to inquire as to the fourth prong; whether a similarly situated male employee was treated more favorably than Doney. The Court finds that Doney has failed to satisfy this inquiry.

Doney's Letter of Separation states "you have been unavailable for work when needed or

called upon numerous times.  Reasons you gave included your cat needing to go to the vet, injuring your foot (off duty) with a pitchfork, and also having 'too many things to do at home.' In addition to being unavailable, you continue to fail in scanning SMP work-orders after I discussed previous failures with you."  (ECF No. 23-2, Def.'s Ex. A. at PageID #214).    Per the Letter, Doney's termination was based on continued instances of unavailability and low SPM ratings, which occurred after her thirty-day evaluation. *Id*.  Put differently, her termination was based on her failure to shore up performance and attendance problems during the remaining sixty days of her probationary period.

Thus, Doney has failed to establish a prima facie case of sex-based discrimination based on her mistaken ranking on the seniority list, her thirty-day review, and her termination. The Court's inquiry could end here; however, the Court will address Plaintiff's arguments in her Opposition to the USPS's Motion.

> **b.  The USPS has satisfied its burden to provide legitimate non-discriminatory reasons for its actions.**

As previously stated, Doney's improper seniority ranking was a mistake that was corrected within one week of notifying her supervisor. Both her negative thirty-day evaluation and termination were based on numerous absences from scheduled shifts and low SPM ratings.

As part of the EEOC's investigation, Iaskov testified that after her thirty-day evaluation "Ms. Doney was needed at work yet gave an excuse June 10th, June 14th, June 25th through July 1st, July 3rd, and July 14th.  After her evaluation on May 24th, Ms. Doney denied (failed to respond to) SPMs three times on June 8th, once on June 18th, once on June 22nd, and she only partially completed a SPM on June 17th."  (ECF No. 23-2, Def.'s Ex. A at PageID #200).[7]  The USPS

---

[7] A review of Doney's Absence Analysis form for Leave Year 2019 supports Iaskov's testimony regarding Doney's absences.  (ECF No. 23-2, Def.'s Ex. A at PageID #189-90).

provided SPM scan results for the month of June 2019, the month after Doney's thirty-day evaluation. A comparison of Doney's scans with Bowen's and Miller's scans shows that Bowen received a rating of 84.62%, Miller received a rating of 84.27%, and Doney received a rating of 15%. (*Id*. at PageID #172). After considering the evidence in the record, the parties' arguments, and the relevant case law, the Court finds that the USPS has met its burden to articulate a legitimate nondiscriminatory reasons for its actions.

### c. Doney has not demonstrated that the USPS's reasons are pretextual.

The USPS's concerns relative to Doney's performance during her probationary period constitute legitimate nondiscriminatory reasons supporting its decision to terminate her employment. The Court now turns to the issue of whether Doney has offered sufficient evidence to create a genuine dispute of material facts as to whether the USPS's legitimate nondiscriminatory reasons are pretext for sex-based discrimination. The Court finds that Doney has not shown that the USPS's asserted reasons for her termination are pretextual.

In the Sixth Circuit, a plaintiff can establish pretext in one of three ways: "show that the proffered reason (1) 'had no basis in fact,' (2) 'did not actually motivate the employer's action,' or (3) was insufficient to motivate the employer's action.'" *Okakpu-Mbah v. Postmaster Gen. of the United States*, No. 21-2811, 2022 WL 3928534, at *7 (6th Cir. 2022) (citing *O'Donnell v. City of Cleveland*, 383 F.3d 718, 728-29 (6th Cir. 2016); *see also Miles*, 946 F.3d at 888. However, these are not the only three avenues a plaintiff may take to prove pretext; "these three avenues are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Miles*, 946 F.3d at 888. (internal citations and quotation marks omitted). The Sixth Circuit has stated that "[t]he plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's explanation of why

it fired him." *Willard v. Huntington Ford, Inc*., 952 F.3d 795, 810 (6th Cir. 2020) (citing *Chen v. Dow Chem. Co*., 580 F.3d 294, 400 (6th Cir. 2009)). Doney has not identified which, if any, of the above-mentioned avenues she is using. As a result, the Court will proceed to the ultimate inquiry: whether Doney has "articulate[d] some cognizable explanation of how the evidence she has put forth establishes pretext." *Miles*, 946 F.3d at 888.

### i. The USPS's proffered reasons for terminating Doney have a basis in fact.

As previously discussed, Doney received a negative thirty-day evaluation based on performance, attendance, work quantity, work relations and personal conduct. She and Iaskov discussed the evaluation and afterward she continued to have attendance and performance issues for the remainder of her probationary period. Both Doney's Absence Analysis and SPM scan record support Iaskov's evaluation of Doney's performance contained in the Letter of Separation. Doney has not presented any evidence to disprove that she had persistent attendance and performance issues. Accordingly, Doney has failed to show that the reasons for her termination have no basis in fact. *See Okakpu-Mbah*, 2022 WL 3928534 at *8-10 (The plaintiff failed to show that the Postal Service's reasons for her discharge had no basis in fact when she received a negative review based on her manager's concern about her efficiency and the plaintiff presented no evidence to the contrary).

### ii. The USPS's proffered reasons motivated Doney's termination.

Doney has not established that her attendance and low SPM ratings did not actually motivate her termination. Doney's arguments include: 1) Bowen and Miller also had attendance issues, 2) Miller received formal attendance counseling and she did not, and 3) Miller received SPM scan training and she did not. These arguments fall flat.

Doney's speculation about other female RCAs is irrelevant. Doney claims that Bowen had

seventeen absences between June 2019 and October 2019.  However, in his EEOC investigation affidavit, Iaskov testified that through her first ninety-four calendar days, Bowen had "0 instances of calling off when scheduled or unavailability to work when called upon" and that Doney was not privy to performance evaluations of other employees.  (ECF No. 23-2, Def.'s Ex. A. at PageID# 201).[8]  Doney has presented no evidence to controvert Iaskov's testimony.

Whether Bowen and Miller had the same issues and/or received a similar negative thirty-day evaluation immaterial to the analysis.  Even if they did, they improved by the end of probation and Doney did not.  *See Okakpu-Mbah*, 2022 WL 3928534 at *13-4 n. 8 (The plaintiff and other employees were not "similarly situated" because the other employees' work quantity and dependability improved, and the plaintiff's did not.) (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) ("[d]ifferences in experience and disciplinary history [may] establish that 'comparators' are not similarly situated.")).  Specifically, Doney received a 15% SPM rating in the month after her thirty-day evaluation compared to the other female RCAs' 84.62% and 84.27% SPM ratings, respectively.  Thus, Doney, Bowen, and Miller are not similarly situated and the significant difference in their SPM ratings weighs against any finding of pretext.  *See Okakpu-Mbah*, 2022 WL 3928534 at *14 n. 9 (citing *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779-80 (6th Cir. 2016)) (The plaintiff and other employees did not engage "in substantially identical conduct to that which the [Postal Service] contends motivated its discharge" of the plaintiff and, thus, this difference fails to establish pretext.").

---

[8] A review of Doney's Absence Analysis form for Leave Year 2019 supports Iaskov's testimony regarding Bowen's absences. See ECF No. 23-2, Def.'s Ex. A at PageID #189-90.

Doney's argument that she did not receive the same SPM scan training or formal attendance counseling as Miller is moot. She was aware that she needed to improve her SPM ratings and attendance after her thirty-day evaluation and did not. *See Okakpu-Mbah*, 2022 WL 3928534 at *14 (Holding that the plaintiff did not establish pretext, the court rejected her argument that she did not receive a sixty or eighty-day review and did not have the benefit of additional feedback because she was aware of her problematic performance after her thirty-day evaluation and presented no evidence that she improved.). Most importantly, though, Doney continues to compare her treatment to that of other female RCAs; the record in this case is bereft of any evidence that she was treated less favorably than a similarly situated male RCA.

### iii. The USPS's proffered reasons are sufficient to motivate Doney's termination.

Doney has not established that her attendance and low SPM ratings are insufficient to motivate her termination. Doney argues that Iaskov's failure to exercise discretion with regard to her attendance demonstrates an insufficient basis for termination. (ECF No. 26, Opp. at PageID #1077). She explained that Iaskov's usual practice would be to exercise discretion in affording requested time off if he could find a replacement. *Id*. However, he did not exercise this discretion and instead counted her June 10, 2019 absence against her, even though he found a replacement. *Id*. She also states that she was on medical leave, notice of which she gave Iaskov. *Id*. Yet, Doney failed to provide evidence that she was in fact on medical leave and gave Iaskov notice, nor did she provide explanations for the other absences at issue.

In his EEOC affidavit, Iaskov referenced the USPS Employee Handbook (the "Handbook") to support his testimony that "the probationary period… is a critical time for new employees to demonstrate both an ability and willingness to adhere to the requirements of [their] position." (ECF No. 23-2, Def.'s Ex. A at PageID #206). The Handbook states:

17

> "The probationary period represents the final step in determining an employee's suitability. Since only an actual trial on the job can be conclusive. Proper use of the probationary period is in the best interests of both the new employee and the Postal Service. During this period, the new employee receives orientation and whatever training the employee needs. Attentiveness to the new employee, both in training sessions and on the job, may ensure the satisfaction and efficiency of an employee who might otherwise be separated."[9]

Iaskov further testified that he has held the positions of USPS Supervisor, Station Manager, and Postmaster since 2005, and in his professional experience – including but not limited to evaluating and determining employee retention – Doney's attendance and performance issues did not justify retaining her beyond the probationary period. (*Id*. at PageID #207). The Court finds that Iaskov's professional experience coupled with the evidence of Doney's deficiencies are sufficient motivating factors for Doney's termination. Thus, the USPS is entitled to summary judgment on the merits of Doney's sex-based discrimination claim.

### B. Title VII Hostile Work Environment

Title VII provides "it shall be an unlawful employment practice for an employer… to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…sex…" 42 U.S.C. 2000e-2(a)(1). Doney alleges that the harassment she reported caused her to experience a hostile work environment and that her reporting of that harassment resulted in her termination.

In order to establish a claim of hostile work environment under Title VII, a plaintiff must present evidence of harassment that "unreasonably interferes with [her] work performance and creates an objectively intimidating, hostile or offensive work environment." *Grace v. USCAR*,

---

[9] Handbook EL-312, Employment and Placement, Section 584.1 Significance of Probationary Period (ECF No. 23-2, Def.'s Ex. A at PageID #206-07).

521 F.3d 655, 678 (6th Cir. 2008).  Doney must show that she was subjected to unwelcome harassment based on her sex, that the harassment created a hostile work environment, and that the USPS failed to take reasonable action to prevent and correct the harassment.  *Collette v. Stein-Mart, Inc*., 126 Fed.Appx. 678, 681, 2005 WL 293662 (6th Cir. 2005) *see also Schram v. Slater*, 105 Fed.Appx. 34, 38-9 (6th Cir. 2004)(citing *Williams v. GMC*, 187 F.3d 533, 560-1 (6th Cir. 1999)).  The harassment must be "sufficiently severe or pervasive to alter the conditions of [her] employment." *Collette*, 126 Fed.Appx. at 681 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) (internal citations omitted)).  Doney's claim that she experienced a hostile work environment fails because she has not shown that she experienced severe or pervasive harassment, nor has  she shown that the USPS responded with indifference or unreasonableness to her report of harassment.

Doney alleged that she experienced sexual harassment on May 19, 2019.[10]  She formally reported the harassment to her supervisor three days later.[11]  On the day that she made the formal report, Iaskov notified his chain of command and initiated an investigation.[12]  Simpson (the alleged perpetrator) was then interviewed about the alleged harassment and removed from the Amazon Sunday volunteer list.[13]  Doney was also interviewed, and she asked that she be removed from the Amazon Sunday volunteer list, and she was.[14]  Dressler made the decision to keep Doney and Simpson permanently separated at work.[15]  Doney was placed back on the Amazon Sunday list on July 14, 2019.[16]  Simpson was not scheduled to work Amazon Sunday on July 14, 2019.[17]  Doney

---

[10] ECF No. 1, Compl. at PageID #3-4.
[11] *Id*. at PageID #4.
[12] ECF No. 23-1, Mem. in Supp. at PageID #124.
[13] *Id*.
[14] *Id*. at PageID #125; ECF No. 26, Mem. in Opp. at PageID #1066.
[15] ECF No. 23-1, Mem. in Supp. at PageID #125.
[16] ECF No. 23-1, Mem. in Supp at PageID #126
[17] *Id*.

informed Dressler that she was not comfortable working Amazon Sunday.[18]  Doney was removed from the schedule and she did not work another Amazon Sunday.[19]  She does not allege nor is there any evidence before the Court that she ever worked with, or came into contact with, Simpson again while employed by the USPS.

Doney did not experience harassment that was severe or pervasive enough to alter the state of her employment.  The Supreme Court provided a non-exhaustive list of factors to consider when deciding whether a hostile work environment exists including: "*the frequency of the discriminatory conduct*; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Grace*, 521 F.3d at 678-9 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (emphasis added)).  There is no evidence that Doney experienced frequent harassment. She only worked with Simpson once and was kept separate from him after that day.   She was given the option to continue (or discontinue) volunteering for Amazon Sundays at the Wadsworth Post Office; she chose not to do it. Her work at the Clinton Post Office was unaffected by the single incident with Simpson.

Doney's attempt to challenge the reasonableness of the USPS's investigation fails.  Iaskov initiated an investigation as soon as Doney reported the incident. This included notifying upper management and human resources, as well as conducting interviews of Simpson and Doney. (ECF No. 23-1, Mem. in Supp. at PageID #124).  "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."  *Collette,* 126 Fed.Appx. at 686 (citing *Swenson v. Potter,* 271 F.3d 1184, 1193 (9th Cir.2001)).  "By doing so, 'the employer puts all employees on

---

[18] *Id.*
[19] *Id.*

20

notice that it takes such allegations seriously and will not tolerate harassment in the workplace.'" *Id.* Thus, the USPS is entitled to summary judgment on the merits of Doney's hostile work environment claim

### C.  Title VII Retaliation

Title VII prohibits an employer from retaliating against an employee because of that individual's exercise of protected conduct.  42 U.S.C. § 2000e-(3)(a).  Prior to filing a claim of retaliation in federal court under Title VII, an employee must exhaust all administrative remedies with the EEOC.  *See Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 361 (6th Cir. 2010).  There is no dispute with regard to whether Doney exhausted all administrative remedies with the EEOC prior to filing her claim in this Court.

To establish a prima facie case of retaliation, Doney must establish that (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the USPS; (3) thereafter, the USPS took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987)).  There is no dispute that Doney's report of sexual harassment is Title VII protected activity, the USPS knew that she was exercising her right to report this conduct, and she suffered an adverse employment action when she was terminated.

To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action (or engaged in a protected activity). *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997); *Jackson v. RKO Bottlers,* 743 F.2d 370, 377 (6th Cir.1984). Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated

21

employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *See Moon v. Transport Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir.1987).

As discussed above, Doney, Bowen, and Miller are not similarly situated because of their differences in performance and attendance. While Doney attempts to compare her circumstance to those of Bowen and Miller, the USPS has provided more persuasive evidence that another female RCA, Anita Pluskota ("Pluskota"), with similar performance issues was terminated at the end of her probationary period.[20] In his EEOC affidavit, Iaskov testified that Pluskota had not engaged in protected activity[21] and failed to meet availability and performance standards; she was issued a Letter of Separation on May 31, 2019. (ECF No. 23-2, Def.'s Ex. A at PageID #178, 203-04). This evidence shows that USPS policy supports termination when there are attendance and performance issues, regardless of whether the employee has engaged in protected activity.

The Sixth Circuit has also spoken on the question of whether temporal proximity between the protected activity and the adverse action, in and of itself, is sufficient to establish a causal connection. *See Cooper v. City of North Olmsted,* 795 F.2d 1265 (6th Cir.1986). In *Cooper,* the court rejected the proposition that temporal proximity is enough, noting that the plaintiff had pointed to no additional evidence to support a finding that the protected activity and the adverse action were connected. "The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation.... The record in this case contains no evidence directly linking the nine citations at issue to Cooper's filing of the OCRC discrimination charges." *Id.* at 1272.

---

[20] (ECF No. 23-2, Def.'s Ex. A at PageID #178, 203-04, 215).
[21] See (ECF No. 23-2, Def.'s Ex. A at PageID #178).

The Sixth Circuit, reaffirming its holding in *Cooper*, held "a causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation.... However, temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Parnell v. West,* No. 95-2131, 1997 WL 271751, *2 (6th Cir.1997).

Doney's retaliation claim is based on her allegation that she was fired in response to her reporting of sexual harassment by Simpson.  However, Doney does not provide evidence to substantiate a causal connection between her May 2019 report and July 2019 termination.  In her Opposition, Doney argues that there are temporal connections supporting her claim.  (ECF No. 26, Opp. at PageID at #1078).  Specifically, three days between her report and thirty-day evaluation, and less than eight weeks between her report and termination. *Id*.  But she does not provide additional evidence to support her allegation that her termination was connected to her report. Doney had several unexcused absences and low SPM ratings during her ninety-day probationary period.[22]  She  had a negative thirty-day review in which her performance, attendance, and SPM issues were discussed.[23]  The evidence before the Court indicates that her issues persisted and did not improve after that.  As previously stated, the USPS has shown that these issues constitute legitimate nondiscriminatory reasons to terminate Doney.  Accordingly, the Court finds that the USPS did not terminate Doney in retaliation for her report of sexual harassment.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 23) and finds that Defendant is entitled to judgment as a matter of law.

---

[22] ECF No. 23-2, Def.'s Ex. A at PageID #200.
[23] ECF No. 26, Mem. in Opp. at PageID #1067-8; ECF No. 27, Reply in. Supp. at PageID #1084.

**IT IS SO ORDERED.**

Dated: March 30, 2023

_____
CHARLES E. FLEMING
U.S. District Court Judge